IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:25-CV-00490-KDB-SCR

| | |
|---|---|
| POLINA ZHURAVLEVA,<br><br>Plaintiff,<br><br>v.<br><br>ANGELICA ALFONSO-ROYALS,<br><br>Defendant. | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on Plaintiff's Emergency Motion for Preliminary Injunction (Doc. No. 8). The Court has carefully considered the motion and the parties' briefs and exhibits, including, as it must, the threshold question of whether the Court has subject matter jurisdiction to hear this action. As discussed below, because the Court concludes that it lacks subject matter jurisdiction, it will **DISMISS** the matter and **DENY** the pending motions as moot.

### I. LEGAL STANDARD

A court must, as a "threshold matter," consider whether it has subject matter jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998); *Sucampo Pharmaceuticals, Inc. v. Astellas Pharma, Inc*., 471 F.3d 544, 548 (4th Cir. 2006). "Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist*., 475 U.S. 534, 541 (1986). No other matter can be decided without subject matter jurisdiction. *See United States v. Cotton*, 535 U.S. 625, 630 (2002); *U.S. v. Wilson*, 699 F.3d 789, 793 (4th Cir. 2012).

Subject-matter jurisdiction cannot be conferred by the parties, nor can a defect in subject-matter jurisdiction be waived or forfeited by the parties. *Id.* "Accordingly, questions of subject-matter jurisdiction may be raised at any point during the proceedings" and indeed must be raised *sua sponte* by the court when it appears that the court may lack jurisdiction. *Brickwood Contractors, Inc. v. Datanet Engineering, Inc.*, 395 F.3d 385, 390 (4th Cir. 2004); *see Wilson*, 699 F.3d at 793. The plaintiff bears the burden of proving subject matter jurisdiction. *Richmond, F. & P.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). A court must dismiss an action pursuant to Federal Rule of Civil Procedure 12(h)(3) "if the court determines at any time that it lacks subject matter jurisdiction." *See* Fed. R. Civ. P. 12(h)(3).

## II.     FACTS AND PROCEDURAL HISTORY

On January 3, 2019, Plaintiff Polina Zhuravleva, a Russian citizen, was admitted to the United States on a B-2 visa. Doc. No. 6 ("Am. Compl.") at ¶ 10. The visa authorized her to remain in the United States until July 2, 2019. *Id.* On May 22, 2019, Ms. Zhuravleva applied to extend her B-2 status. *Id.* at ¶ 11. Her application was approved, and her visa was extended until January 2, 2020. *Id.* On December 31, 2019, Ms. Zhuravleva applied for asylum. *Id.* at ¶ 12. Two months later, after the expiration of her B-2 visa, United States Citizenship and Immigration Services ("USCIS") notified Ms. Zhuravleva of a deficiency in her application.[1] *Id.* at ¶ 13. Since curing the deficiency and resubmitting the asylum application on February 29, 2020, Ms. Zhuravleva's asylum application has remained in pending status. *Id.* at ¶ 15.

---

[1] According to Ms. Zhuravleva, her application was improperly denied under USCIS's "No Blank Space" policy. Doc. No. 8 n.1. This policy denied applications if any fields were left blank, and upon correction, used the date of the correction as the application date (instead of the date the application was originally filed). After the policy was challenged in *Vangala v. U.S. Citizenship & Immigration Services*, No. 4:20-cv-08143-HSG (N.D. Cal. Nov. 19, 2020), and pursuant to a settlement agreement, USCIS agreed to stop denying applications under the policy, and to accept applications as of the date of original filing.

On May 4, 2024, Ms. Zhuravleva was selected in the 2025 Diversity Visa ("DV") Lottery, which serves as a pathway to obtaining legal permanent resident status. *Id.* at ¶ 16. The lottery entitles the approximately 50,000 people chosen to apply for an immigrant visa during the fiscal year in which the entry was submitted. *Id.* The 2025 fiscal year ends September 30, 2025. *Id.* at ¶ 22. Ms. Zhuravleva submitted the required I-485 Application for Adjustment of Status with USCIS, paid the filing fee, and appeared on December 4, 2024, for her biometrics appointment. *Id.* at ¶¶ 17-19. Shortly after filing her Complaint seeking to compel USCIS to adjudicate her pending I-485 application, USCIS denied it, because she failed to maintain "continuous nonimmigrant status." *Id.* at ¶¶ 20-21. The Notice of Decision explains that Ms. Zhuravleva

> failed to continuously maintain lawful status from January 2, 2020 [when her B-2 visa expired] through present. Though [the] pending I-589 [asylum application] may allow [Ms. Zhuravleva] to remain in the United States, simply filing an application for an immigration benefit or having a pending benefit application does not put an applicant in a lawful immigration status.[2]

Doc. No. 6-1 at 2.

Because the fiscal year ends in a matter of days, Ms. Zhuravleva filed an Emergency Motion for Preliminary Injunction, asking this Court to compel USCIS to vacate its "erroneous denial of her adjustment of status application." *Id.* at 1.

---

[2] While the Notice also states that her asylum application was filed two months after her visa expired, the Court notes that using Ms. Zhuravleva's original asylum application date does not cure the asserted deficiency. *See Kavafoglu v. Nielsen*, No. 4:18-CV-3512, 2019 WL 172865, at *3 (S.D. Tex. Jan. 11, 2019) (holding that plaintiffs did not have lawful immigration status when they allowed their "non-immigrant visitor" visas to expire after applying for asylum because they did not attain "any new, lawful status or maintain their pre-existing B-1/B-2 visitor visas" before they expired, and explaining that "pursuant to an exercise of discretion by an USCIS official, [plaintiffs] were granted permission to remain in the U.S. during the pendency of their asylum application," but that "USCIS's authorization in this regard does not equate to a right protected by law during the pendency of [plaintiffs] asylum application sufficient to confer 'lawful' immigration status.").

## III.  DISCUSSION

Ms. Zhuravleva challenges USCIS's denial of her I-485 application to adjust status because it does not contain what she considers to be sufficient analysis of [her] eligibility for the 'no/fault technical reasons' exception, arguing that under 8 U.S.C. § 1255(c)(2) and 8 C.F.R. § 245.1(d)(2)(ii) her application should have been approved. Doc. Nos. 6 at ¶¶ 18, 21; 8 at 3. Defendant contends that this Court is without jurisdiction to decide the merits of Plaintiff's claims because a noncitizen's challenge to orders denying an adjustment of status is barred, both by statute and the Supreme Court's recent holding in *Patel v. Garland*, 596 U.S. 328 (2022). Doc. No. 11 at 2. The Court agrees.

There is no dispute that Ms. Zhuravleva's claims are governed by § 1255, the "adjustment of status" provision of the Immigration and Nationality Act ("INA"). Under § 1255(c), a noncitizen is barred from adjusting their status if they "failed (other than through no fault of [her] own or for technical reasons) to maintain continuously a lawful status since entry into the United States." However, 8 U.S.C. § 1252(a)(2)(B)(i), which governs the Court's jurisdiction to hear a matter under § 1255, precludes judicial review of any "judgment, decision, or action … regarding the granting of relief" under it, "regardless of whether [it] is made in removal proceedings." *See* § 1252(a)(2)(B).

USCIS is assigned "authority over applications for adjustment of status made outside of removal proceedings." *Patel*, 596 U.S. at 333. Put another way, "USCIS is the only entity that can issue an authoritative decision on adjustment applications outside the removal context, and it is therefore the only entity whose decisions on those applications could fall within the scope of the "regardless" clause of § 1252(a)(2)(B)(i)." *Xia v. Bondi*, 137 F.4th 85, 91 (2d Cir. 2025). "Thus, Congress's clear directive that no federal court may review a denial of an adjustment application

under § 1255, even if it occurs outside removal proceedings, necessarily applies to decisions by USCIS." *Id. See Badra v. Jaddou,* No. 1:22-CV-22465-JEM, 2022 WL 4448260, at *3 (S.D. Fla. Sept. 14, 2022), *report and recommendation adopted,* No. 22-22465-CIV, 2022 WL 4376331 (S.D. Fla. Sept. 22, 2022).[3]

Recently, the Supreme Court explained that § 1252(a)(2)(B)(i) prohibits review of "*any* judgment *regarding* the granting of relief under § 1255." *Patel,* 596 U.S. at 338 (emphasis in original). As a result, "[f]ederal [district] courts lack jurisdiction to review facts found as part of discretionary-relief proceedings under § 1255 and the other provisions enumerated in § 1252(a)(2)(B)(i)." *Id.* at 347. Although the plaintiff in *Patel* was in removal proceedings, "the Supreme Court interpreted the statute at issue here, and its interpretation of the statute is controlling and clear: the only challenge to any decision pertaining to an adjustment of status is a legal challenge made to a Circuit Court upon an order of removal." *Badra,* 2022 WL 4448260, at *5. Such is not the case here.

Moreover, the circuit courts which have considered the question in the wake of *Patel* have come to the same conclusion, albeit sometimes hesitantly, that district courts lack jurisdiction to review USCIS denials of adjustment to status applications. *See e.g., Xia v. Bondi,* 137 F.4th at 87 ("a denial of an application for adjustment of status under § 1255 is a 'judgment' for purposes of § 1252(a)(2)(B)(i) … [and] the jurisdictional bar applies."); *Commandant v. Dist. Dir., Miami Dist.*

---

[3] Citing *Patel,* the *Badra* Court dismissed claims based on facts substantially similar to Ms. Zhuravleva's. There, the plaintiffs entered the country on a B-2 visa, and prior to the visa's expiration, applied for asylum. While their applications were pending, the plaintiffs successfully entered the DV Lottery. Their subsequent adjustment of status applications were denied because they were not in "lawful immigration status" from the time their visas expired until they were granted a temporary protected status approximately two years later. The court found (reluctantly) that *Patel* precluded review and dismissed the plaintiffs' claims. *See Badra,* 2022 WL 4448260, at *7.

*(S24), USCIS*, No. 21-10372, 2024 WL 3565390 (11th Cir. July 29, 2024), *cert. denied sub nom. Jocelyn v. Rinehart*, 145 S. Ct. 1961, 221 L. Ed. 2d 739 (2025) (affirming the district court's dismissal for lack of jurisdiction where plaintiffs sought review after USCIS denied their applications for adjustment of status under § 1252(a)(2)(B)(i)); *Momin v. Jaddou*, 113 F.4th 552 (5th Cir. 2024) ("In light of the plain text of § 1252(a)(2)(B)(i) and the reasoning in *Patel*, every court of appeals to consider the question has held that the jurisdictional bar applies outside the removal context–including to USCIS denials of adjustment of status."); *Britkovyy v. Mayorkas*, 60 F.4th 1024, 1028 (7th Cir. 2023) ("The result is that § 1252(a)(2)(B)(i) operates to eliminate judicial review of the denial of an adjustment-of-status application by USCIS."). The Court therefore concludes that it lacks jurisdiction over Ms. Zhuravleva's claims and, accordingly, must dismiss the matter and deny the pending motions as moot.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Plaintiff's claims are **DISMISSED**;

2. Plaintiff's Emergency Motion for Preliminary Injunction (Doc. No. 8) is **DENIED** as moot;

3. Defendant's Motion to Dismiss (Doc. No. 9) is **DENIED** as moot; and

4. The Clerk is directed to close this matter in accordance with this Order.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: September 26, 2025

Kenneth D. Bell
United States District Judge